IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPLICIT NETWORKS INC., | No. C 10-03746 SI |
| Plaintiff, | **ORDER ON PENDING DISCOVERY MOTIONS** |
| v. | |
| HEWLETT-PACKARD COMPANY, | |
| Defendant. | |

Currently before the Court is Implicit Network's second motion to compel discovery (Docket No. 50) and Hewlett-Packard's ("HP") motion to compel Implicit to provide further amended infringement contentions pursuant to Patent Local Rule 3.1 and for a protective order excusing it from providing further discovery until amended infringement contentions are provided. (Docket No. 52). These matters were set for hearing on September 2, 2011. Pursuant to Civil Local Rule 7-1(b), the Court found these matters appropriate for resolution without oral argument and vacated the hearing. Having considered the papers submitted, and for the reasons discussed below, the Court GRANTS Implicit's motion to compel and GRANTS in part and DENIES in part HP's motion to compel further amendments to the infringement contentions.

**BACKGROUND**

In this case, plaintiff Implicit accuses defendant HP of infringing two groups of patents. Implicit's '163 and '857 patents ("Data Flow Patents"),[1] involve a network data processing system

---

[1] U.S. Patent Nos. 6,629,163 and 7,711,857.

where discrete networking functions are captured in modular code blocks. Implicit alleges that three groups of HP products infringe on these patents: (1) Quality of Service ("QoS") features in HP's H3C and Procurve network switches and routers as well as HP's QoSM software module; (2) HP's Tipping Point Intrusion Prevention and Threat Suppression Engine ("TSE"); and (3) HP's WAN Application Acceleration Module ("WAAM"). The second group of patents allegedly infringed are Implicit's '248, '685 and '740 patents ("Application Server Patents").[2] These patents are related to the Data Flow Patents, as implemented in a software engine that compiles web applications. Implicit alleges that a fourth group of HP's products infringe the Application Server Patents: (4) the Web Server Suite in the HP-UX server.

Implicit complains that HP has provided only limited discovery with respect to the TSE and WAAM products and that HP has completely refused to provide discovery with respect to the QoS and Web Server Suite products. *See* Implicit's Second Motion to Compel, Docket 50 at 2. HP responds that its production and response for the TSE and WAAM products has been full and complete. Docket No. 54 at 2. HP admits that it has not produced discovery for the QoS and Web Server Suite products, but justifies its conduct by asserting that Implicit's Patent Local Rule 3.1 infringement contentions are insufficient for those products and arguing that it cannot adequately respond to discovery until the infringement contentions are improved. As such, HP has also moved to compel Implicit to provide more complete disclosures and stay the related discovery with respect to the QoS and Web Server Suite products. *See* HP's Motion to Compel and for a Protective Order, Docket No. 52.

**DISCUSSION**

**I. HP's Motion to Compel Amended Infringement Contentions**

Under this Court's Local Patent Rules, no later than "14 days after the Initial Case Management Conference, a party claiming patent infringement shall serve on all parties a 'Disclosure of Asserted Claims and Infringement Contentions.'" That disclosure must include a list of accused products or instrumentalities which plaintiff claims infringe in its patents and, "[a] chart identifying specifically

---

[2] U.S. Patent Nos. 6,324,685, 6,976,248 and 7,774,740.

where each limitation of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3-1(c). "The overriding principle of the Patent Local Rules is that they are designed make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *InterTrust Techs. Corp. v. Microsoft Corp.*, 2003 U.S. Dist. LEXIS 22736, *6 (N.D. Cal. Nov. 26, 2003). The purpose of Patent Local Rule 3-1, is "to require a plaintiff to crystalize its theory of the case and patent claims." *Id.*, *8.

Here, HP challenges the sufficiency of Implicit's claim charts for the Data Flow Patents, with respect to the disclosures relevant to the QoS products. HP argues that Implicit's infringement contentions do not provide the "element-by-element" mapping required by the Patent Local Rules and the "reverse engineering or its equivalent" showing necessary to meet that standard. *See* HP Motion to Compel (Docket No. 51) at 11; *see also Network Caching LLC v. Novell, Inc.*, 2002 U.S. Dist. LEXIS 26098, *16 (N.D. Cal. Aug. 13, 2002). HP contends that Implicit's Patent L.R. 3-1( c) charts for the Data Flow patents are insufficient because the charts: fail to accuse any specific product model or series of switches "with any degree of particularity"; shoehorn the over 120 different products at issue into one chart for each patent, as if all products are identical; and rely for support only on generalized citations to HP manuals as explanation of Implicit's theory of infringement. *See* HP Motion to Compel at 12.

The Court, however, finds Implicit's amended claim chart for the Data Flow Patents sufficient.[3] For the Data Flow Patents – which appear to cover a broadly defined process of data flow management – Implicit has provided charts which identify for each category of products at issue how exactly Implicit believes HP's group of products infringes on each claim. *See, e.g.*, Kent Decl., Ex. J. at 12. Each time Implicit accuses a specific group of HP products of infringing an element of a claim, HP provides a narrative explanation of how the product group infringes and supports that narrative with citations to HP manuals and other HP documentation for specific products within that group. *Id*. at 12 - 21. Taken together, Implicit's chart adequately explains Implicit's theory of how the HP products infringe claims within the process covered by the Data Flow Patents, and identifies where in the accused product the

---

[3] In support of its motion, HP provided the "Amended Disclosures of Asserted Claims and Infringement Contentions" for only one of the Data Flow Patents, patent '163. *See* Declaration of Robert J. Kent (Docket No. 53) at ¶ 10, Ex. J. The parties appear to agree that the amended claim chart for the other Data Flow Patent at issue, '857, is materially similar.

infringement occurs.

For example, in the chart provided for the '163 patent, Ex. J to the Kent Declaration, Implicit identifies the infringing products by category on a claim by claim basis. *See e.g.*, Ex. J at 12 (identifying iMC QoS Manager); at 13 (identifying "H3C-derived Accused Products"); at 16 (identifying "Procurve-derived accused Products"). The specific accused products that fall within each of the three categories are listed at Appendix A of Implicit's Amended Disclosures of Asserted Claims and Infringement Contentions. *See* Ex. H to Kent Decl. at 9-10. Taken together, Implicit's submissions provide HP with full information as to Implicit's theory of where, in each of its group of HP products, Implicit asserts the product infringes specific claims.

HP complains that Implicit should not be able to lump together the "different" products included in at least two of the "categories" used by Implicit, *e.g.*, the "H3C-derived Accused Products" and the "Procurve-derived accused Products." *See* HP Motion to Compel at 12. Implicit responds that it grouped the products specifically identified in Appendix A to Exhibit H to the Kent Declaration together because the products identified function in essentially the same way and, therefore, infringe each claim in essentially the same way. Implicit Opposition at 2. HP contests this assertion, but provides no specific argument, much less evidence, that any of the products grouped together in the categories used by Implicit actually function in different ways that make Implicit's categorization improper. *Cf. Bender v. Maxim Integrated Products, Inc.*, 2010 U..S. Dist. LEXIS 32115, *7-8 (N.D. Cal. March 22, 2010) (noting that claim charts can, in appropriate cases and given appropriate support, place accused products into representative categories).

HP also complains that the narratives provided by Implicit – explaining why Implicit believes each category of products infringes on specific elements of each claim – are insufficient. Implicit's narratives, however, are specific for each element of each claim and for each category of HP product. Moreover, Implicit relies, in addition to the narratives, on citations to HP's own manuals and other technical documents to show for each of the three categories of HP products at issue why Implicit believes the products infringe on the data process covered by the patents. This is not a case where plaintiff is asking the Court to assume that defendants' products infringe particular claims. *But see Bender v. Maxim Integrated Products, Inc.*, 2010 U..S. Dist. LEXIS 32115, *5-6. This is likewise not

4

a case where plaintiff is relying only on industry standards to support its accusations, but one where HP's own product manuals and specifications show how data is processed by its products and those documents, therefore, can be relied on to support Implicit's infringement contentions.

HP also challenges the sufficiency of Implicit's charts for the Application Server Patents, with respect to the Web Server Suite ("WSS") in the HP-UX server, arguing that Implicit has failed to meet the "reverse engineering or its equivalent" standard required by the Patent Local Rules to support its infringement contentions. *See* HP Reply at 9-11. HP asserts that its WSS product is based on "open source software" and that the WSS is provided to customers for free, implying that anyone – even Implicit – could secure a copy. HP Reply at 6. HP therefore urges that Implicit should be required to "reverse engineer" the WSS product and provide amended infringement contentions for the patents with respect to the WSS product to supplement the narratives currently provided, which do not identify where the infringement occurs in the WSS product with any specificity. *Id.*, at 6-7.[4] HP argues that without additional information – which Implicit would be able to provide after reverse engineering the WSS product and comparing it to its Application Server Patents on an element-by-element basis – HP is left without a fair notice of Implicit's infringement theory and no way to know which specific components of WSS are accused. The Court agrees, with respect to the Application Server Patents that cover software engines performing specific functions, that Implicit's contentions are deficient and should be supplemented with the level of detail reverse engineering provides.[5]

Finally, HP argues that Implicit's claim charts are also deficient because in its cover pleading

---

[4] As with the Data Flow Patents, HP provides only one "exemplar" claim chart for the Application Serve Patents. *See* Kent Decl., Ex. L (attaching the claim chart for the '685 patent). The parties appear to agree that the amended claim charts for the two other Application Server Patents at issue are materially similar.

[5] Implicit provided a declaration from David Bernstein, arguing that HP has modified the open source Tomcat Apache software that forms the basis of the WSS to such a degree that reverse engineering would serve no purpose. Bernstein Decl. (Docket No. 57). However, in light of Implicit's failure to specifically locate the infringement within the actual WSS product, the Court finds that HP's position – that the WSS product is free and available – is sufficient to require Implicit to reverse engineer the WSS product itself, not the open source code it is allegedly based on. If it turns out that the actual source code for the WSS product is not readily available to Implicit for its analysis, the Court ORDERS that it be provided to Implicit immediately and that the due date for Implicit's revised infringement contentions for the Application Server Patents is extended by the number of days it takes for Implicit to secure a copy of the WSS code for its reverse engineering analysis.

5

for its infringement contentions Implicit contends that each element of each claim is present "in the alternative" under the doctrine of equivalents. *See* HP Motion to Compel at 14; HP Reply at 11. The Court agrees that Implicit cannot simply recite the doctrine of equivalents in its cover pleading to its claim charts without providing specific analysis, on an element-by-element basis, as to its theory of why there is infringement under the doctrine of equivalents. *See, e.g.*, *Optimumpath, LLC v. Belkin Int'l, Inc*, 2011 U.S. Dist. LEXIS 41634, *25 (N.D. Cal. Apr. 12, 2011) (finding insufficient under Patent L.R. 3-1a blanket claim of infringement under doctrine of equivalents where plaintiff did not raise doctrine on a claim-by-claim basis as required under local rules and noting that "judges of this court have rejected plaintiffs' attempts to assert claims under the doctrine of equivalents with blanket statements."). If Implicit actually intends to assert the doctrine of equivalents for infringement, it must provide an element-by-element explanation of why and how in its claim charts.

**II.     Implicit's Motion to Compel and HP's Motion to for a Protective Order Staying Discovery**

Implicit contends, and HP does not dispute, that HP has failed to provide documents required by Patent L.R. 3-4, interrogatory responses and a Rule 30(b)(6) deponent regarding the QoS products (relevant to the alleged infringement of the Data Flow Patents) and the WSS products (relevant to the alleged infringement of the Application Server Patents). Courts in this district have agreed to stay a patent defendant's otherwise applicable discovery obligations in light of deficient infringement contentions. *See, e.g., Bender v. Maxim Integrated Prods.*, 2010 U.S. Dist. LEXIS 32115, *7 (N.D. Cal. Mar. 22, 2010) (agreeing to postpone a defendant's discovery obligations until plaintiff submitted sufficient infringement contentions).

The Court finds that in light of the amendments to the infringement contentions ordered above, that Implicit's motion to compel should be granted with respect to the QoS products but discovery regarding the WSS products should be stayed pending Implicit's production of amended infringement contentions.

**CONCLUSION**

For the foregoing reasons, HP's motion to compel amended infringement contentions is GRANTED in part. Within forty-five (45) days of this Order, Implicit must provide amended

6

infringement contentions addressing the deficiencies identified above.

Implicit's motion to compel is GRANTED in part. Within thirty (30) days of the date of this order, HP shall produce documents pursuant to Patent L.R. 3-4 regarding the Data Flow Patents and QoS products identified in Appendix A of Implicit's Amended Disclosure of Asserted Claims and Infringement Contentions. HP is also ordered to provide substantive responses to Interrogatory Nos. 6, 7, 8, and 13 and provide Rule 30(b)(6) deponents with respect to these patents and products.

HP's motion to for a protective order is GRANTED in part. The discovery regarding the Application Serve Patents/WSS product is STAYED until thirty (30) days after Implicit provides the amended infringement contentions ordered above.

**IT IS SO ORDERED.**

Dated: September 7, 2011

SUSAN ILLSTON
United States District Judge